FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 0 5 2022

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| RONALD CHASE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-6-BSM |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, RONALD CHASE, Plaintiff, complaining of UNITED STATES OF AMERICA, and for cause of action will respectfully show unto the Court as follows:

### I.
### PRELIMINARY STATEMENT

1. This is an action asserting tort claims under the Federal Tort Claims Act (FTCA) arising from an incident at FCI Forrest City Low and the negligent medical care that followed.

2. On January 12, 2020, Plaintiff Ronald Chase was an inmate at FCI Forrest City Low. That day, Officer Powell searched Mr. Chase's bunk and locker looking for a radio. Officer Powell then began searching other inmates' bunk areas for the radio. The other inmates became upset and blamed Mr. Chase for Officer Powell searching their bunks. As Officer Powell was leaving, she stated out loud, "yall can thank Chase for that." An inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?" Officer Powell then turned around and responded, "yall handle him." Officer Powell then left. The other inmates then "handled" Mr. Chase by throwing him through a door causing Mr. Chase to land on his head and shoulders, breaking Mr. Chase's neck.

This case assigned to District Judge _Miller_
and to Magistrate Judge _Harris_

3.  Mr. Chase's injuries are the direct result of Officer Powell negligently leaving the doors unlocked, telling the other inmates, "yall can thank Chase for that" after searching their property, and then responding "yall handle him" when an inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?" But for Officer Powell's acts, Mr. Chase's neck would not have been broken. It was foreseeable and obvious that Officer Powell telling inmates their bunks were searched because of Mr. Chase and that the inmates can "handle him," would result in serious injuries to Mr. Chase.

4.  Following this incident, Bureau of Prisons ("BOP") employees, including Doctor Hari Kapur and Nurse Practitioner Rosemary Stiles, Nwannem Obi-Okoye, Kevin Ward, and A. Ray, denied Mr. Chase adequate medical care following his injuries and surgery, equipment to support his neck and back, and the ability and opportunity to complete physical therapy that he needed to rehab his broken neck.

## II.
## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action under the United States Constitution and under 28 U.S.C. §§ 1331, 1343, 1346, and 2671, et seq.

6.  Venue is proper in the Eastern District of Arkansas pursuant to 28 U.S.C. §§ 1391(b) and 1402(b) as the actions at issue in this matter occurred in Forrest City, Arkansas, which is located within the Eastern District of Arkansas.

7.  Mr. Chase has exhausted his federal tort claim administrative remedies.

8.  Mr. Chase filed notice of his claims with the Federal Bureau of Prisons, South Central Regional Office.

9.  Mr. Chase's claims were acknowledged on May 17, 2021; however, no further response was given as of the filing of this Complaint, and six months have passed.

## III.
## PARTIES

10. Plaintiff Ronald Chase is a citizen of the United States. At the time of these incidents that make the basis of this Complaint, Mr. Chase was incarcerated at FCI Forrest City Low in Forrest City, Arkansas. Mr. Chase is currently incarcerated at FCI Beaumont Medium in Beaumont, Texas.

11. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

## IV.
## FACTS AND ALLEGATIONS

12. On or about January 12, 2020, Plaintiff Ronald Chase, was an inmate assigned to Federal Bureau of Prisons, FCI Forrest City Low in Forrest City, Arkansas. Mr. Chase's Federal Register Number is 22984-078.

### Officer Powell Encouraged and Allowed Inmates to Assault Ronald Chase

13. On January 12, 2020, Officer Powell was working at FCI Forrest City Low on the WC and WD side.

14. Officer Powell walked through the middle hallway where the counselor's offices are located.

15. Officer Powell walked from WC to WD, where Mr. Chase was housed.

16. These doors were supposed to be locked at all times when the counselors were not at work, which was the case at that time.

17. Officer Powell left these doors unlocked.

18. Officer Powell also left the doors leading outside unlocked, which were supposed to be locked at all times except during a five-minute move, which was not occurring at that time.

3

19. Officer Powell approached Mr. Chase's bunk in WD to search for contraband, to wit: a radio.

20. Officer Powell searched through Mr. Chase's bunk and locker.

21. Officer Powell appeared angry with Mr. Chase and told him to go to another part of the dorm until she was finished.

22. Mr. Chase complied.

23. Officer Powell told other inmates that if Mr. Chase did not stay away from his bunk during her search, that she would search the other inmates' lockers as well.

24. The other inmates told Mr. Chase to keep his distance during her search so that she would not search their lockers as well.

25. Mr. Chase kept his distance as Officer Powell and the other inmates instructed him to do.

26. Once Officer Powell was finished with her search of Mr. Chase's bunk and locker, Mr. Chase went back to his bunk.

27. However, Officer Powell then began searching other inmates' bunk areas for the radio.

28. The other inmates became upset and blamed Mr. Chase for Officer Powell searching their bunks.

29. As Officer Powell was walking toward the hallway door leading back to WC, she stated out loud, "yall can thank Chase for that."

30. An inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?"

31. Officer Powell then turned around and responded, "yall handle him."

32. Officer Powell then left WD and walked to WC.

33. Mr. Chase was standing about fifteen feet from the outside door, facing the door.

34. This was a door that Officer Powell left unlocked, despite the rule that this door should remain locked except during a five-minute move.

35. All of a sudden, Mr. Chase was bear hugged from behind, with his hands pinned to his sides, and lifted off his feet.

36. He was then carried toward the outside door, which Officer Powell left unlocked.

37. Mr. Chase heard someone behind him say "get the door" and then his head hit the door as the inmates carrying him were trying to open the door.

38. Once the door was opened, the inmates threw Mr. Chase out of the door.

39. Mr. Chase landed on his head and shoulders on the concrete.

**Mr. Chase was Seriously Injured as a Result of the Assault Officer Powell Encouraged**

40. Multiple officers across the compound at H-building saw Mr. Chase thrown out of the door at WD.

41. The officers went across the compound to see what was going on.

42. These officers included: Officer White, who was running the compound, Officer Thompson, Lt. Ledford, Ms. Dillard, and a couple other officers.

43. Mr. Chase was badly injured.

44. He did not have any feeling in his body, while at the same time experiencing extreme pain in his right shoulder, arm, and hand.

45. It would later be determined that his neck was broken in two places as a result of being thrown out of the doors and onto the concrete, following Officer Powell telling the inmates, "yall can thank Chase for that" and then "yall handle him."

46. When Mr. Chase was able to gather his thoughts, he believed he was paralyzed.

47. Then a painful tingling feeling went through his body.

48. Mr. Chase was able to get to his feet and attempted to go back into his unit; however, inmates were holding the door shut.

49. Mr. Chase made it into a bathroom in another unit, WB.

50. Some of the officers went to WD and Officer White went into WB to get Mr. Chase.

51. Officer White told Mr. Chase that Officer White saw what happened and knew that Mr. Chase was injured.

52. Officer White then took Mr. Chase to the infirmary where Mr. Chase was examined by Nurse Yates.

53. An ambulance was called and Mr. Chase was taken to the hospital in Forrest City for further treatment and x-rays.

54. The doctor that treated Mr. Chase reviewed his x-rays and informed Mr. Chase and the officers who were present that Mr. Chase's neck was broken in two places – the fifth and sixth vertebrae.

55. The doctor explained that the pain Mr. Chase was feeling in his shoulder, arm, and hand was most likely nerve damage due being thrown on the concrete.

56. Mr. Chase was then taken to the emergency room, and after further testing and x-rays he was told that he would be having an operation the following day.

57. During his operation the following day, Mr. Chase had four screws and two plates inserted into his neck around the top of his spinal cord.

58. A brace was put on his neck to keep his head and neck from moving.

59. The doctors told Mr. Chase he was lucky not to be paralyzed from the neck down, but that his injuries were severe, and he had a long recovery ahead of him.

60. The doctors explained to Mr. Chase that he was now at a high risk to be paralyzed if something hit him in the head or neck.

61. Mr. Chase remained in the ICU for another week.

**BOP Employees Failed to Provide Adequate Medical Care by Denying Physical Therapy**

62. On January 20, 2020, Mr. Chase was transferred to Delta Medical Center to recover and start physical therapy on his neck, shoulder, and arm.

63. His neck was locking up in one position for extended periods at a time – a painful issue he is still dealing with today.

64. On February 20, 2020, Mr. Chase was transferred by ambulance back to Regional One Hospital for more x-rays and follow-ups.

65. Mr. Chase was told his neck would take a long time to heal.

66. He was then transferred back to Delta Medical Center.

67. In March 2020, BOP officials from FCI Forrest City arrived at Delta Medical Center to transfer Mr. Chase back to Regional One Hospital, where he would stay on the fifth-floor wing where other Forrest City inmates were being treated.

68. Due to this transfer, Mr. Chase was not allowed to complete his physical therapy.

69. After only a day or two at Regional One Hospital, BOP officials transferred Mr. Chase in the Forrest City prison van back to Forrest City where he was placed in the Special Housing Unit (SHU).

70. Once placed in the SHU, Mr. Chase was not provided access to physical therapy for his broken neck.

71. Doctor Hari Kapur explained to Mr. Chase that physical therapy was not provided at FCI Forrest City, but that Mr. Chase would eventually be transferred to a medical prison.

72. A week later, Mr. Chase was sent back to Regional One Hospital for follow-ups and physical therapy.

73. However, during his first therapy session during this hospital stay, he was discharged before he had even completed the full session.

74. The nurses at Regional One Hospital explained to Mr. Chase that the medical administration at FCI Forrest City did not admit him correctly as a long-term patient.

75. Once back at FCI Forrest City, Doctor Hari Kapur told Mr. Chase that he was going to make sure Mr. Chase was admitted correctly into the hospital.

76. However, Mr. Chase was not sent back to the hospital and was not provided an opportunity to continue or complete his physical therapy.

77. In addition to Doctor Hari Kapur, Mr. Chase was treated by BOP employees Nurse Practitioner Rosemary Stiles, Nwannem Obi-Okoye, Kevin Ward, and A. Ray, following surgery on his broken neck.

78. Each of these BOP employees denied Mr. Chase adequate medical care following his injuries and surgery, equipment to support his neck and back, and the ability and opportunity to complete physical therapy that he needed to rehab his broken neck.

### BOP Employees' Negligence Caused Mr. Chase Injuries and Denied Him Adequate Medical Care

79. Mr. Chase's injuries are the direct result of Officer Powell negligently leaving the doors unlocked, telling the other inmates, "yall can thank Chase for that" after searching their property, then responding "yall handle him" when an inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?", and then leaving the inmates and Mr. Chase unsupervised.

80. But for Officer Powell's acts, Mr. Chase's neck would not have been broken.

81. It was foreseeable and obvious that Officer Powell telling inmates their bunks were searched because of Mr. Chase and that the inmates can "handle him," would result in serious injuries to Mr. Chase.

82. Additionally, BOP employees, including Doctor Hari Kapur and Nurse Practitioner Rosemary Stiles, Nwannem Obi-Okoye, Kevin Ward, and A. Ray, denied Mr. Chase adequate medical care following his injuries and surgery, equipment to support his neck and back, and the ability and opportunity to complete physical therapy that he needed to rehab his broken neck.

## V.
## CAUSES OF ACTION

### Count One

### FEDERAL TORT CLAIMS ACT
### Failure to Protect

83. Mr. Chase repeats and re-alleges each and every allegation contained in the above paragraphs, incorporates those allegations in this Count, and further alleges as follows:

84. BOP employee Powell, as described above negligently left the doors unlocked, told the other inmates, "yall can thank Chase for that" after searching their property, and then responded "yall handle him" when an inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?"

85. There was no justification for Powell's actions.

86. These actions constitute the tort of Failure to Protect under the laws of the state of Arkansas and the Arkansas Civil Rights Act. Ark. Code Ann. § 16-123-105.

87. Powell was acting in the course and scope of her employment when she failed to protect Mr. Chase from the known threat of harm the other inmates posed when Powell instructed them to "handle him."

88. Powell did not have the discretion to allow other inmates to harm or "handle" Mr. Chase as this constituted cruel and unusual punishment in violation of the Eighth Amendment and Powell did not have discretion to violate the Eighth Amendment.

89. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

90. Mr. Chase requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

## Count Two

## FEDERAL TORT CLAIMS ACT
### Negligent Medical Care

91. Mr. Chase repeats and re-alleges each and every allegation contained in the above paragraphs, incorporates those allegations in this Count, and further alleges as follows:

92. On January 20, 2020, Mr. Chase was transferred to Delta Medical Center to recover and start physical therapy on his neck, shoulder, and arm.

93. His neck was locking up in one position for extended periods at a time – a painful issue he is still dealing with today.

94. On February 20, 2020, Mr. Chase was transferred by ambulance back to Regional One Hospital for more x-rays and follow-ups.

95. Mr. Chase was told his neck would take a long time to heal.

96. He was then transferred back to Delta Medical Center.

97. In March 2020, BOP officials from FCI Forrest City arrived at Delta Medical Center to transfer Mr. Chase back to Regional One Hospital, where he would stay on the fifth-floor wing where other Forrest City inmates were being treated.

98. Due to this transfer, Mr. Chase was not allowed to complete his physical therapy.

99. After only a day or two at Regional One Hospital, BOP officials transferred Mr. Chase in the Forrest City prison van back to Forrest City where he was placed in the Special Housing Unit (SHU).

100. Once placed in the SHU, Mr. Chase was not provided access to physical therapy for his broken neck.

101. Doctor Hari Kapur explained to Mr. Chase that physical therapy was not provided at FCI Forrest City, but that Mr. Chase would eventually be transferred to a medical prison.

102. A week later, Mr. Chase was sent back to Regional One Hospital for follow-ups and physical therapy.

103. However, during his first therapy session during this hospital stay, he was discharged before he had even completed the full session.

104. The nurses at Regional One Hospital explained to Mr. Chase that the medical administration at FCI Forrest City did not admit him correctly as a long-term patient.

105. Once back at FCI Forrest City, Doctor Hari Kapur told Mr. Chase that he was going to make sure Mr. Chase was admitted correctly into the hospital.

106. However, Mr. Chase was not sent back to the hospital and was not provided an opportunity to continue or complete his physical therapy.

107. In addition to Doctor Hari Kapur, Mr. Chase was treated by BOP employees Nurse Practitioner Rosemary Stiles, Nwannem Obi-Okoye, Kevin Ward, and A. Ray, following surgery on his broken neck.

108. Each of these BOP employees denied Mr. Chase adequate medical care following his injuries and surgery, equipment to support his neck and back, and the ability and opportunity to complete physical therapy that he needed to rehab his broken neck.

109. There was no justification for denying Mr. Chase the opportunity to complete physical therapy.

110. These actions constitute the tort of Negligent Medical Care in violation of the Duty of Physicians or Other Medical Care Providers under the laws of the state of Arkansas.

111. These BOP medical personnel performing were acting in the course and scope of their employment when they failed to provide Mr. Chase an opportunity to complete physical therapy.

112. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

113. Mr. Chase requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

**Count Three**

**FEDERAL TORT CLAIMS ACT**
**Negligence**

114. Mr. Chase repeats and re-alleges each and every allegation contained in the above paragraphs, incorporates those allegations in this Count, and further alleges as follows:

115. The United States of America owed a duty to Mr. Chase as Mr. Chase was under the United States of America's custody and control.

116. The United States of America breached its duty, which breach was a direct and proximate cause and a substantial factor in bringing about Mr. Chase's injuries and damages outlined above.

117. In particular, through the conduct of its employees, Defendant United States of America violated its duty to Mr. Chase by:

a. Officer Powell negligently leaving the door unlocked which the other inmates were then able to throw Mr. Chase through, breaking his neck;

b. Officer Powell negligently informing the other inmates that Mr. Chase was to blame for their belongings being searched;

c. Officer Powell negligently instructing the other inmates to "handle him" when an inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?";

d. Officer Powell negligently leaving the area so that no correctional officer supervision was present after informing the other inmates that Mr. Chases was to blame for their belongings being searched and then advising them to "handle him" when an inmate yelled out loud, "Ms. Powell, what are you going to do with Chase?";

e. Negligently transferring Mr. Chase between facilities so that he was unable to complete physical therapy;

f. Negligently failing to provide physical therapy at FCI Forrest City;

g. Negligently failing to transfer Mr. Chase to a medical prison despite knowing his need for access to physical therapy which was not provided at the prison he was being housed;

h. Medical administration at FCI Forrest City negligently failing to admit Mr. Chase correctly as a long-term patient at Regional One Hospital causing Mr. Chase to be discharged before completing physical therapy;

i. Dr. Hari Kapur and each of the medical personnel interacting with Mr. Chase, which included Nurse Practitioner Rosemary Stiles, Nwannem Obi-Okoye, Kevin Ward, and A. Ray negligently failing to send Mr. Chase back to the hospital to

complete physical therapy knowing that Mr. Chase needed it, Mr. Chase had not been given an opportunity to complete it, and Mr. Chase was unable to complete physical therapy at FCI Forrest City because it was not offered at that unit;

118. The harm suffered by Mr. Chase as a result of Defendant's breach of its duty was foreseeable.

119. The above-described acts and omissions constitute the tort of negligence under the laws of the state of Arkansas.

120. The above described acts which constituted negligence were performed by Defendant's employees in the course and scope of their employment.

121. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

122. Mr. Chase requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

## VI.
## RELIEF

123. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

124. Mr. Chase respectfully requests this Honorable Court grant him the following:

    a. Compensatory damages as to all Counts;

    b. Declaratory relief as to all Counts;

    c. Reasonable attorneys' fees and costs; and,

    d. Such other further relief as this Court deems just and appropriate.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this court and for all other relief to which he may show himself justly entitled.

Respectfully submitted,

_____
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
Colorado Bar No. 46582

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF